**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

MAR 2 8 2016

JAMES W. McCORMACK, CLERK
By: _Meg twot_
DEP CLERK

DEXTER DUREN and DEARTHUR GRICE                           PLAINTIFFS

VS.                          CASE NO. 5:13-CV-00347 JM

URS CORPORATION                                          DEFENDANT

### NOTICE OF APPEAL

"Notice of Appeal to
United States Court of Appeal
for the Eighth Circuit"

Pursuant to Rule 4(a)(3) of the Federal Rules of Appellate Procedure, Dexter Duren and

DeArthur Grice, the plaintiffs are taking an appeal to the United States Court of Appeals for the

Eighth Circuit from the final *Order* and *Judgment* of the Eastern District of Arkansas, Pine Bluff

Division, entered in this case on February 25, 2016. The Order entered on February 25, 2016,

granted the defendant's Motion for Summary Judgment. [**Doc. # 42**]. (**A copy of said order is**

**attached herein as Exhibit 1**). The Judgment entered on February 25, 2016, dismissed the plaintiffs'

complaint with prejudice. (**A copy of said judgment is attached herein as Exhibit 2**).

The parties to the order and judgment appealed from and the names and addresses of their

respective attorneys are as follows:

a) Dexter Duren and DeArthur Grice - Plaintiffs

Respectfully submitted,

Austin Porter Jr.

1

PORTER LAW FIRM
323 Center Street, Suite 1035
Little Rock, Arkansas 72201
Telephone No.: 501-244-8200
Facsimile No.: 501-372-5567

E-mail: Aporte5640@aol.com

By: _____
    Austin Porter Jr., No. 86145


## CERTIFICATE OF SERVICE

I, Austin Porter Jr., do hereby certify that a copy of the foregoing pleading has been served on Brian Vandiver, COX, STERLING, MCCLURE & VANDIVER, PLLC, 8712 Counts Massie Road, North Little Rock, Arkansas 72113-7265, by placing a copy of same in the United States Mail with sufficient postage prepaid, on this 28th day of March 2016.

_____
Austin Porter Jr.

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## PINE BLUFF DIVISION

**DEXTER DUREN AND DEARTHUR GRICE**                    **PLAINTIFFS**

**V.**                              **NO. 5:13CV00347 JM**

**URS CORPORATION**                              **DEFENDANT**

### ORDER

Pending is Defendant's motion for summary judgment. (Docket # 24).  Plaintiffs have

filed a response and Defendant has filed a reply.  For the reasons set forth herein, the motion is

GRANTED.

### Facts

This is a race discrimination and retaliation case under 42 U.S.C. §1981.  Plaintiffs

Dexter Duren and DeArthur Grice claim that Defendant URS discriminated against them

because of their race, black, and retaliated against them because of Duren's previous lawsuit

against URS.

URS Corporation (and prior corporate entities including Washington Group

International, Inc. ("WGI") which was acquired by URS in November 2007) had a federal

contract with the U. S. Department of Defense to destroy chemical weapons at the Pine Bluff

Arsenal.  URS's facility at the Pine Bluff Arsenal was an incineration plant called the Pine

Bluff Chemical Agent Disposal Facility ("PBCDF").    Plaintiff Dexter Duren was employed at

PBCDF on May 14, 2001 as an Information Systems Administrator.   Plaintiff DeArthur Grice

was employed at PBCDF on April 23, 2007 as the IT Manager.  As IT Manager, Plaintiff Grice

supervised the Information Technology (IT) Department, where he supervised twelve (12)

employees including Plaintiff Duren.

EXHIBIT

1

Plaintiff Duren filed a lawsuit against WGI alleging race discrimination and retaliation on November 17, 2007, styled Dexter Duren v. Washington Group International, Inc., United States District Court for the Eastern District of Arkansas, 5:07-CV-00297 BSM ("Duren v. WGI"). Duren v. WGI was tried to U. S. District Judge Brian Miller on May 4-7, 2009. Plaintiff Grice participated in Duren v. WGI as a witness. Judge Miller entered an Order in the case on June 5, 2009 finding in favor of WGI regarding a 2004 promotion and in favor of Duren regarding a 2006 promotion.

In October 2009, Plaintiff Grice submitted Plaintiff Duren's name as the IT Department's Top Contributor. URS managers wanted Kathy Berry (white female), one of Plaintiff's Duren's coworkers, to receive the IT Department's Top Contributor Award for 2009. In November 2009, Plaintiff Grice and other URS managers could not agree on who should receive the IT Department's Top Contributor Award for 2009, so no award was given. Defendant contends that there was no automatic pay raise tied to the Top Contributor Award. Plaintiffs claim that there are financial benefits in being named the "Top Contributor." Plaintiff Duren alleges that he was denied this award in retaliation for his previous lawsuit and because of his race.

Plaintiff Grice submitted Plaintiff Duren's name for the Top Contributor Award in October 2009, more than two months after the August 2009 Judgment, more than four months after the June 2009 Order, and more than five months after the May 2009 trial in Duren v. WGI. Plaintiff Duren was awarded the Top Contributor Award in 2013.

Plaintiff Grice requested to change Plaintiff Duren's job title from IT Specialist to IT Manager in July 2010, March 2011, and April 2012. URS claims that both positions were

2

Grade 15 and the job title change would not have affected Plaintiff Duren's pay. URS claims that it denied the requests because Plaintiff Duren's then current job title accurately reflected his job and URS only needed one IT Manager, a position held by Plaintiff Grice.

In 2013, the PBCDF was nearing closure and finishing its contract with the federal government. The PBCDF closed December 17, 2013. As part of the closure process, URS implemented several reductions in force ("RIF"), including a RIF for a group of employees which included Plaintiffs that ultimately occurred on August 15, 2013. The original RIF date for the group of employees which included Plaintiffs was earlier in 2013, but it was moved back by Project General Manager Greg Thomasson because of a specific need and a project that had not been completed. It is undisputed that the date change had nothing to do with Plaintiff Duren's race or his previous lawsuit. Defendant claims that before August 15, 2013, Thomasson asked Plaintiff Duren and Plaintiff Grice if either would like to stay at PBCDF after August 15, 2013 on a contract basis. The IT work needed after August 15, 2013 was a lower level of skill and was for a lower rate of pay. Defendant claims that both Plaintiffs declined the offer. Thomasson then hired Russell Morris (white male) on a contract basis to perform the needed IT work between the RIF on August 15, 2013 and when the PBCDF closed in December 2013.

Plaintiffs claim that both Dexter Duren and DeArthur Grice requested assistance from the defendant's "Workforce Mobility Program." And, both plaintiffs applied for several positions with the defendant at different locations following the RIF. Plaintiffs claim that they did not tell Mr. Thomasson that they were unwilling to work on a contract basis after August 15, 2013. Plaintiff Duren claims that his employment at PBCDF should have ended when Russell Morris

3

left the PBCDF in December 2013.

Duren applied for several transfers at other URS facilities around the country and overseas (including jobs in the United Kingdom). Duren claims that he was more qualified than several successful candidates who were Caucasian, yet he was not selected to fill the vacant positions.

In November 2009, URS reclassified job titles for IT employees at several of its facilities. Defendant's claim that as a result of the IT reclassification, URS eliminated the Grade 16 IT Manager job title. Plaintiff Grice was initially reclassified to an IT Project Manager – Grade 15 position, but after he filed an internal complaint and URS conducted a further review, URS reclassified him to an IT Manager II – Grade 17 position. Grice's pay was not affected by the reclassification. Grice contends that his demotion was in retaliation for his participation in Duren's lawsuit and based upon his race.

In May 2012, URS conducted an internal investigation relating to a URS employee Calvin Wilkins, falsifying his time records. URS claims that it believed Grice played a role in advising or assisting Calvin Wilkins, so it asked IT personnel from outside PBCDF to assist in the investigation. Grice claims that there was no reasonable basis for the Defendant's suspicion and this was another act of retaliation against him. URS also claims that it believed that Grice interfered with the investigation. Grice was suspended with pay on May 24, 2012 then without pay on June 4, 2012. Grice denies that he did anything wrong and claims the suspension was an act of retaliation.

Grice was a part of the August 15, 2013 reduction in force and does not contend that he was entitled to work at the PBCDF past that date. Grice applied for three transfers at other URS

4

facilities around the country. Two of the positions were not awarded to anyone. Grice was not

selected for the third position. Grice claims that he was denied this position based upon his race

and in retaliation for his participation in Duren's previous lawsuit.

Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue of material

fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart*, 813 F.2d

874 (8th Cir. 1987); Fed. R. Civ. P. 56. The Supreme Court has established guidelines to assist

trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining
> whether there is a need for trial -- whether, in other words, there
> are any genuine factual issues that properly can be resolved only
> by a finder of fact because they may reasonably be resolved in
> favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be

invoked carefully so that no person will be improperly deprived of a trial of disputed factual

issues. *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*,

444 U.S. 991 (1979). The Eighth Circuit set out the burden of the parties in connection with a

summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the moving party for summary judgment is only to
> demonstrate, *i.e.*, '[to] point out to the District Court,' that the
> record does not disclose a genuine dispute on a material fact. It is
> enough for the movant to bring up the fact that the record does not
> contain such an issue and to identify that part of the record which
> bears out his assertion. Once this is done, his burden is
> discharged, and, if the record in fact bears out the claim that no
> genuine dispute exists on any material fact, it is then the
> respondent's burden to set forth affirmative evidence, specific

5

> facts, showing that there is a genuine dispute on that issue. If the
> respondent fails to carry that burden, summary judgment should be
> granted.

*Id.* at 1339 (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th

Cir. 1988) (citations omitted)(brackets in original)). Only disputes over facts that may affect the

outcome of the suit under governing law will properly preclude the entry of summary judgment.

*Anderson*, 477 U.S. at 248.

The Eighth Circuit Court of Appeals has made clear that "[t]here is no 'discrimination

case exception' to the application of summary judgment, which is a useful pretrial tool to

determine whether any case, including one alleging discrimination, merits a trial." *Togerson v.

City of Rochester,* 643 F.3d 1031, 1043 (8th Cir. 2011) (citation omitted).

### Discussion

Plaintiffs' claims under Section 1981 are analyzed under the same legal framework used

to analyze Title VII claims. *Richmond v. Bd. of Regents of Univ. of Minn.*, 957 F.2d 595, 598

(8th Cir. 1992). First, the employee may produce direct evidence of discrimination. Second, "[i]f

the employee lacks direct evidence of discrimination, he can survive summary judgment by

showing a genuine dispute for trial under the burden-shifting framework established in

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973)." *McCullough v. Univ. of Ark.

For Med. Scis.*, 559 F.3d 855, 860 (8th Cir. 2009).

Because Plaintiffs present no direct evidence of discrimination, the Court will apply the

analytical framework set forth in *McDonnell Douglas.* Under this framework, the plaintiff has

the initial burden of establishing a prima facie case of discrimination. *McGinnis v. Union Pacific

R.R. Co.*, 496 F.3d 868, 873 (8th Cir. 2007). The plaintiff's successful establishment of a *prima*

6

*facie* case creates a presumption of unlawful discrimination and shifts the burden to the

defendant, who must then articulate a legitimate, nondiscriminatory reason for its actions. *Id.*

Finally, if the defendant proffers such a reason, the plaintiff must then show that the defendant's

proffered reason is merely a pretext for discrimination. *Id.*

To establish a prima facie case of race discrimination,  plaintiffs must show: (1) that they

are a member of a protected class, (2) that they were meeting the employer's legitimate job

expectations, (3) that they suffered an adverse employment action, and (4) that similarly situated

employees outside the protected class were treated differently. *Clark v. Runyon*, 218 F.3d 915,

918 (8th Cir.2000).

To establish a prima facie case of discrimination in the RIF context under Section 1981, a

plaintiff must 1) show that he was within a protected group, 2) show that he met applicable job

qualifications, 3) show that he was discharged, and 4) produce some additional evidence that

race was a factor in his termination. *Hughes v. Ortho Pharm. Corp.*, 177 F.3d 701, 705 (8th

Cir.1999)(*citing Herrero v. St. Louis Univ. Hosp.*, 109 F.3d 481, 483–84 (8th Cir.1997)).

To establish a retaliation claim under section 1981, a plaintiff must show: (1) he engaged

in statutorily protected activity; (2) he suffered an adverse employment action; and (3) the

adverse action was causally connected to the protected activity. *Wright v. St Vincent Health

System*, 730 F.3d 732, 737 (8th Cir.2013). Causation requires a showing that the protected

activity was a "determinative—not merely a motivating—factor in the employer's adverse

employment decision." *Van Horn v. Best Buy Stores, L.P.*, 526 F.3d 1144, 1148 (8th Cir.2008).

Duren

Plaintiff Duren argues that he was denied the Top Contributor Award in November 2009

7

and was subsequently denied job title changes and promotions because of his race and in

retaliation for his previous lawsuit. Duren also claims that he should have been allowed to stay

at the facility past his scheduled RIF date of August 15, 2013 and that he was not hired for other

URS jobs at other URS facilities for which he applied because of his race and in retaliation for

his previous lawsuit.

Plaintiff Duren fails to present a prima facie case of race discrimination with regard to

the denial of the Top Contributor Award in November 2009. No award was given, therefore, no

similarly situated employee, not in the protected class, was treated differently. Further, the Court

finds that the Plaintiff did not suffer a material adverse employment action by the denial of the

award. Although the Top Contributor Award made an employee eligible for a larger pay raise,

the award did not guarantee a pay increase. Further, Duren received a 3.5% pay increase in the

year in which he did not receive the Top Contributor Award yet received a 3% raise the next

year when he did receive the Top Contributor Award. Duren has presented no evidence beyond

speculation to suggest that he was denied any pay increase or suffered any harm as a result of not

receiving the award in 2009.

Plaintiff also failed to present a prima facie case of retaliation with regard to the Top

Contributor Award. First, the Court finds that the denial to award the Top Contributor Award

was not a materially adverse employment action. "The anti-retaliation provision protects an

individual not from all retaliation, but from retaliation that produces an injury or harm."

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67, 126 S. Ct. 2405, 2414, 165 L. Ed.

2d 345 (2006). An employment action is "materially adverse" if it "well might have dissuaded

a reasonable worker from making or supporting" a claim for discrimination. *Id.* (internal

8

quotation omitted). As set forth herein, Plaintiff failed to present any evidence to demonstrate

that he suffered any harm or that the denial of the Top Contributor Award would rise to the level

of an action which would dissuade a reasonable employee from making a claim for

discrimination. Additionally, Plaintiff Duren fails to offer any evidence to connect the denial to

award the Top Contributor Award in 2009 and his previous lawsuit. Duren filed his previous

lawsuit in November 2007 and judgment was entered in Duren's favor in August, 2009.

Generally, "more than a temporal connection is required to present a genuine factual issue on

retaliation," and only in cases where the temporary proximity is very close can the plaintiff rest

on it exclusively. *Tyler v. Univ. of Arkansas Bd. of Trustees*, 628 F.3d 980, 986-87 (8th Cir.

2011)(citations omitted). *See, Lewis v. St. Cloud State Univ.*, 467 F.3d 1133, 1138 (8th

Cir.2006) ("We have held that an interval as brief as two months did not show causation for

purposes of establishing a retaliation claim and that a two-week interval was 'sufficient, but

barely so.'") (internal citations omitted). Plaintiff Duren failed to offer any evidence to show

that his previous lawsuit was the determining factor in the Defendant's decision to not award the

Top Contributor Award in 2009.

Duren's claims relating to the failure to receive job title changes also fail. Plaintiff Grice

requested to change Plaintiff Duren's job title from IT Specialist to IT Manager in July 2010,

March 2011, and April 2012. The job title changes would not have affected Duren's pay and

URS denied the requests because the IT Manager position was held by Plaintiff Grice. Plaintiff

Duren offers no evidence beyond mere speculation that he was denied the job title changes based

upon his race or in retaliation for his previous lawsuit. The comparators to which Plaintiff points

were not similarly situated. Plaintiff argues that certain individuals were granted a qualification

9

waiver allowing them to be reclassified into other positions.  However, Plaintiff was not denied

the job title changes based on his qualifications, he was denied the changes because URS did not

need an IT Manager at the time.  The Defendant has articulated a legitimate non-discriminatory

reason for its denial of the job title changes and Duren has failed to demonstrate pretext.

Duren claims that he should have been allowed to work at URS until December 2013.

Defendant contends that Duren was offered the post-contract work and he did not accept the

position.  Russell Morris was hired by Greg Thomasson, the Project General Manager to perform

the contract work.  Plaintiff offers no evidence to demonstrate that his race or his participation in

a lawsuit with URS four years earlier motivated Thomasson's decision to hire Morris.

Finally, Duren's claims that he was denied jobs following the RIF based upon his race

and in retaliation for his previous lawsuit also fail.  Hiring managers at the other facilities made

the hiring decisions for each of these positions.  Plaintiff offers no evidence other than his

speculation that those managers contacted URS and learned of Plaintiff's race and prior

litigation.  There is no evidence that managers at URS had any involvement with the hiring

decisions about which Plaintiff complains.

### Grice

Plaintiff Grice argues that URS discriminated against him on the basis of his race and in

retaliation for his participation in Duren's previous lawsuit when his IT Manager position was

reclassified in November and December 2009.  Grice also claims that URS failed to hire him for

other URS jobs following the RIF because of his race and in retaliation for his participation in

Duren's lawsuit.  And, he was the victim of discrimination and retaliation when he was

suspended and disciplined.

10

Grice has failed to demonstrate an adverse employment action as a result of his job reclassification. He was originally reclassified as a grade 15, and only one month later reclassified to a grade 17. No pay increase or decrease nor change in terms of employment occurred as a result of either classification. To be materially adverse, retaliation must be more than merely trivial and must produce some "injury or harm." *Littleton v. Pilot Travel Centers, LLC*, 568 F.3d 641 (8th Cir. 2009).

Grice has also failed to demonstrate that his investigation and suspension in 2012 was a result of his race or in retaliation for his participation in Duren's previous lawsuit. URS set forth a legitimate business reason for Grice's suspension, his interference with the investigation, and Grice has failed to offer sufficient evidence demonstrating a genuine issue of material fact that his race or participation in Duren's previous lawsuit were the legitimate reason for his suspension and not his interference with the investigation of falsified time records. "[F]ederal courts do not sit as a super-personnel department that reexamines an entity's business decisions." *Johnson v. Ready Mixed Concrete Co.*, 424 F.3d 806, 812 (8th Cir. 2005) (*quoting Harvey v. Anheuser-Busch, Inc.*, 38 F.3d 968, 973 (8th Cir. 1994) (internal quotations omitted)).

Finally, as with Duren, Grice fails to offer sufficient evidence that he was denied jobs following the RIF based upon his race and in retaliation for his participation in Duren's previous lawsuit. Hiring managers at the other facilities made the hiring decisions for the positions for which he applied. Plaintiff offers no evidence other than his speculation that those managers contacted URS and learned of Plaintiff's race and participation in prior litigation. There is no evidence that managers at URS had any involvement with the hiring decisions about which Plaintiff complains.

<u>Conclusion</u>

For the reasons set forth above, Defendant's motion for summary judgment is granted.

IT IS SO ORDERED this 25th day of February, 2016.

_____
James M. Moody Jr.
United States District Judge

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

DEXTER DUREN AND DEARTHUR GRICE              PLAINTIFFS

V.                NO. 5:13CV00347 JM

URS CORPORATION                DEFENDANT

## JUDGMENT

Pursuant to the Order entered on this date, it is Considered, Ordered and Adjudged that this case be, and it is hereby, dismissed with prejudice.

IT IS SO ORDERED this 25th day of February, 2016.

_____
James M. Moody Jr.
United States District Court

EXHIBIT
2